# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## THIRD DISTRICT—MAY TERM, 1885.

### CHRISTIAN LINCH ET AL.
### v.
### THE CITY OF LITCHFIELD.

1. SUIT ON BOND—SURETIES' LIABILITY.—Where sureties for a defaulting city clerk are sued upon their bonds, which bonds are conditioned that the said clerk should well and truly perform all and every act and duty enjoined on him by law to the best of his skill and ability, and should justly, fairly and promptly account for and pay over and deliver all moneys and other property that might come into his hands by virtue of his said office, said sureties can not be held responsible for sums of money that may be collected by such clerk where there was no ordinance or by-law which authorized or made it the duty of such clerk in the discharge of his duty to collect such sums of money.

1. PUBLICATION OF ORDINANCES—EVIDENCE.—Where the law provides that proof of publication of ordinances shall not be necessary until denied under oath. *Held,* that information and belief can not supply the place of a positive allegation of the non-publication as required by law.

APPEAL from the Circuit Court of Montgomery county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Mr. JAMES M. TRUITT, for appellant; as to publication of ordinances, cited Gaddis v. Richland Co., 92 Ill. 119; Peoria & O. R. R. Co. v. Neill, 16 Ill. 269.

Where the objections to evidence may be removed by other

(612)

proof, specific objections and not general ones must be interposed: Harvey v. Dunn, 89 Ill. 585; Wilson v. King, 83 Ill. 232; Sidwell v. Schumacher, 99 Ill. 426.

The power to tax and assess water rates conferred on the city must be exercised by the city council and can not be delegated to any officer or committee: Thompson v. Schermerhorn, 2 Seld. (N. Y.) 92; City of East St. Louis v. Wehrung, 50 Ill. 28; Birdsall v. Clark, 73 N. Y. 73; Ruggles v. Collur, 43 Mo. 359; Dillon on Municipal Corporations, § 60.

The contract of a surety must be strictly construed and can not be extended by implication: Stull v. Hance, 62 Ill. 52; Cooper v. People, 85 Ill. 417; Reynolds v. Hall, 1 Scam. 35; People v. Moon, 3 Scam. 123; McLain v. People, 85 Ill. 205; Field v. Rawlings, 1 Gilm. 581; Waters v. Simpson, 2 Gilm. 370.

A surety is under no moral obligation whatever to pay the obligee independent of his covenant: Pickersgill v. Laheus, 15 Wall. 140; Winston v. Fenwick, 4 S. & P. 269; Harrison v. Field, 2 Wash. (Va.) 136; Pecker v. Julius, 2 Browne (Pa.), 31; Van Derveer v. Wright, 6 Barb. (N. Y.) 547.

The sureties were only liable for moneys which their principal was authorized and bound by law to receive in his official capacity: People v. Pennock, 60 N. Y. 421; State v. White, 10 Richardson L. 442; Leigh v. Taylor, 7 Barn. & Cress. 491; Saltenberry v. Loucks, 8 La. An. 95; Nolley v. Calloway County Court, 11 Mo. 447; Branch v. Commonwealth, 2 Call (Va.), 510.

As to the deposit of money in the general fund of the treasury: Harker v. Conrad, 12 Serg. & Rawle, 301; Stone v. Tolbot, 14 Wis. 442.

The items of open accounts current do not form *distinct* debts but are blended together in one account, so that only the general balance is considered due: 1 Am. Ldg. Cases, 5th Ed., 358, Note 5; Horsey v. Bennett, 28 Minn. 86; Guernsey v. Carver, 8 Wend. 492; Stevens v. Lockwood, 13 Wend. 644

Mr. GEORGE L. ZINK, for appellee; cited Morgan v. Long, 29 Ia. 434; Moore v. Alleghany City, 18 Pa. St. 55.

DAVIS, P. J.   George W. Jones was appointed city clerk
of the city of Litchfield on the 7th of April, 1881, and on
the ninth of same month he executed to appellee a bond in the
sum of two thousand dollars.   He was re-appointed city
clerk on the 6th of April, 1882, and on the next day exe-
cuted to appellee a bond of like amount.   These bonds were
each executed by George W. Jones as principal and by appel-
lants as sureties and were each conditioned that if the said
Jones should well and truly perform all and every act and
duty enjoined on him by law to the best of his skill and abil-
ity and should justly, fairly and promptly account for and
pay over and deliver all moneys and other property that might
come into his hands by virtue of his said office, then the ob-
ligations to be void.

Separate suits were brought against appellants on each of
these bonds and declarations were filed charging in each case
that Jones, by virtue of his office of city clerk, had collected
and received large sums of money amounting to two thou-
sand dollars, the property and money of appellee, and that he
had not promptly accounted for and paid the same over to
appellee, but had converted the same to his own use.

It was stipulated of record that the two suits should be and
were consolidated.

A plea of *non est factum* was filed to the consolidated
declaration and it was agreed that under such plea appellants
might prove any matter of defense which they might be per-
mitted to prove under any special plea that could be by them
well pleaded, and it was further stipulated that one verdict
and judgment should be entered.

The cause was tried by the court on March 31, 1884, and
the result of the trial was a verdict for appellee for $1,306.46
damages and a judgment against appellants for that amount,
to reverse which the case is brought to this court by appeal.
' Numerous errors are assigned and we will notice those we
deem the most important.

Appellee offered in evidence certain ordinances of the city
of Litchfield on which it relied for a recovery on the two
bonds sued on.   These, the parties agreed, were included

among others in a book of over two hundred pages, in size five by seven inches, inscribed on back, "The Charter, with Synopsis of other Statutes, Revised Ordinances and Statutes pertaining to Litchfield, Illinois. Published by authority of the City Council. Revised by B. S. Hood, City Clerk, March, 1877." To these ordinances were attached a certificate of the city clerk under the seal of the city as authorized by Sec. 14, Chap. 51 of Revised Statutes of 1883, page 537.

It is claimed by appellants that these ordinances had not been published as required by the special charter under which the city is incorporated and were consequently without force or effect. Section 4 of article 13 of the charter of Litchfield provides that "Every ordinance, regulation and by-law imposing any penalty, fine, imprisonment, or forfeiture for a violation of its provisions, shall, after its passage, be published three times where there is a daily paper published, otherwise once in a weekly paper. Provided the proof of such publication shall not be necessary unless it is denied under oath." And section 13 of same article provides that " All ordinances of the city, when printed and published by authority of the city council, shall be received in all courts and places without further proof, which shall not be required until denied under oath."

In support of their objection that the ordinances of the city had not been published as required by the charter, and to require appellee to prove that the ordinances had been properly published as so required, appellants introduced an affidavit of George W. Jones as follows: "George W. Jones, defendant, being first duly sworn, on oath says that he is informed and believes and therefore charges the same to be true, that the several ordinances sought to be introduced in evidence by the plaintiff in this cause, and each and every of said ordinances, have never been published as required by the charter of the plaintiff.

" George W. Jones."

Some objection was made on the trial, by appellee, to the reading in evidence of such affidavit, on the ground that if Jones knew the fact that the ordinances had not been pub-

lished, he should have been put upon the stand as any other witness and been subject to cross-examination, and that by affidavit was not the proper way of putting the city on proof of the publication of its ordinances.   The court below, in deciding the case, admitted the ordinances in evidence.   We think the ordinances were properly admitted.   It was sufficiently proved that they had been printed and published by authority of the city council.   This justified their admission without further proof.   Even if proof of their publication had been necessary, we do not think the affidavit filed was a sufficient "denial under oath" to put the city on further proof.   Without deciding whether the denial under oath should be oral or by written affidavit, we are clearly of the opinion that the denial should be a direct and positive allegation that the ordinances were not published as required by the charter and not as in the affidavit; that they were not so published according to the information and belief of the affiant.   Information and belief can not supply the place of a positive allegation of the non-publication as required by law. Dyer v. Flint, 21 Ill. 80; Archer et al. v. Claflin et al., 31 Ill. 306.

Appellee sought to introduce evidence to prove the receipt of divers license fees by Jones, the clerk, under the two bonds in suit, for pool-tables, ball alleys, billiard tables, shooting galleries, pigeon hole tables, Jenny Lind tables and butchers' licenses, amounting to $418, and also for money received by him for sidewalks, lamps, freight, drayage and railroad crossings, amounting to $44.80; but the court ruled out such evidence and, as we think, very properly, on the ground that no authority was conferred by the ordinances on the clerk to receive money for such license fees and other items; and appellants, as his sureties, only undertook to be responsible for the money which came into his hands by virtue of his office, in the line of his duty as clerk.

Appellee also sought to introduce evidence to prove the receipt by Jones, the clerk, of divers fees on licenses issued by him to menageries and circuses, swings, sleight of hand performances and butchers' licenses and shows, amounting to

$171.15.   To the introduction of this evidence, and each item of the same, appellants objected, on the ground that there was no ordinance or by-law, which authorized or made it the duty of Jones in discharging his duty to collect such sums of money, and that said sums of money, if collected, were collected without authority of law and not in discharge of his duty as clerk, and that therefore appellants, as his sureties, could not be held responsible therefor. The court overruled the objection and permitted such items to be given in evidence, to which ruling appellants excepted. This objection, we think, was properly overruled, except as to the items amounting to $33.65 for butchers' licenses, which should have been sustained under the former ruling of the court. Section 3 of ordinance 246 provides, " That licenses required for all purposes other than those specified in the first section of this ordinance may be granted by the city clerk and shall be signed by him and have the corporate seal of the city affixed thereto." We think under this provision the city clerk had authority to issue the licenses in question and collect the license fees fixed by sections 13 and 14 of same ordinance 246 therefor. It is true that section 3 referred to, does not directly designate the officer to whom the fees should be paid, but it does directly confer upon the clerk the power to grant the license, and section 7 of same ordinance requires the clerk to keep a license register in which he shall enter the name of the person licensed, for what purpose licensed, the amount paid, and the date of the license, etc. It also requires the clerk to pay into the city treasury on the first Monday of each month, all moneys received by him on account of all licenses. These provisions, we think, sufficiently designate the clerk as the officer to whom the license fees should be paid and confers on him sufficient authority to receive them.

Appellee then offered evidence showing that Jones, the clerk, had issued licenses and collected the fees therefor amounting to $1,019.70, for water from the city water works used by the Litchfield Car Company, by the Litchfield Coal Company and by divers mills and manufacturing establish-

Linch v. The City of Litchfield.

ments in Litchfield. Also evidence showing that Jones had received fees as clerk to the amount of $1,260, for water supplied by appellee from water works, but not by meters, to the Wabash, St. Louis & Pacific Railroad Co., and to the Indianapolis & St. Louis Railroad Company. Appellee also introduced in evidence contracts between said railroad companies and the city for furnishing such water. Appellants objected to the evidence offered on the ground that by the ordinances of the city no rents or rates were fixed or established except when water was furnished by meter, for railroads, foundries, machine shops, mills, or manufactories, and in cases where such establishments were supplied with water they were to be assessed by the city council, which had not been done, and until such rates or assessments were made the clerk had no right to make such collections; and that the contracts made with the railroad companies were not assessments under the ordinances of the city. The court, however, overruled the objection and received the evidence. We think the objection was properly overruled. Section 16 of ordinance 261 provides, " That in addition to the duties of the city clerk, otherwise prescribed, he shall receive water rents and receipt for the same." Section 4 of ordinance 272 provides, " That applications for water must be made to the city clerk in writing," and section 5 provides, " That all water rents are hereby declared to be due and must be paid quarterly in advance at the office of the city clerk." Section 3 of ordinance 271 provides, " That all moneys derived from water rents, from the sale of ice, or in any other manner derived from the water works or property belonging to the water works department, together with the tax levied and collected for water works purposes, shall constitute the water fund." Section 3 of ordinance 272 provides a tariff of water rates to be paid per annum by all persons using water from the Litchfield water works, and the tariff embraces the rate fixed for almost every conceivable use to which water can be put, except in case of foundries, machine shops, mills, manufactories and railroads, in which excepted cases the rate is to be assessed. Water used for other purposes than above mentioned,

the rate was fixed, for 1,000 gallons or less per 100 gallons, four cents; for 1,000 to 5,000 gallons per 100 gallons, three cents; and for over 5,000 gallons per 100 gallons, two cents.

Under the provisions of the ordinances referred to it was a duty imposed on Jones, the clerk, to receive all water rents due to the city and receipt for the same, and it was also a duty enjoined on him to pay into the city treasury on the first Monday of each month all moneys received by him on account of all licenses. Under the conditions of the bonds entered into by appellants, they bound themselves as the sureties of Jones, that he should well and truly perform all and every act and duty enjoined on him by law, to the best of his skill and ability, and should justly, fairly and promptly account for and pay over and deliver all moneys and other property that might come into his hands by virtue of his office as city clerk.

It seems to us clear that the money received by Jones for water rents as shown by the evidence admitted by the court was received by him by virtue of his office as city clerk, That as such city clerk he had full power and authority to receive the same, and by his failure to pay it over to the city treasury, appellants are liable for his default. We do not regard the question as one going to the legality of the assessment of the water rates, but as one touching the authority of the city clerk to receive such rates, nor are we prepared to hold they were not properly assessed. So far as the assessment of railroads, except when water was taken by meter figures, we think the contracts entered into between the city and the railroads were assessments to all intents and purposes. The contract price was the rate or assessment fixed by the city council and was the rate at which the clerk should settle with the railroads. In the case of foundries, machine shops, mills, etc., where no assessments had been made, the proprietors of such establishments could not, for that reason, be deprived of the use of water, and in such cases it was the duty of the clerk under the ordinances, when application was made in writing, to furnish the water applied for, and a rate was fixed by the gallon by the ordinance for water so furnished. The point made, that the contracts made by the city were not

made by officers who had authority to execute agreements for the city, can not be noticed further than to say that all the ordinances of the city were introduced in evidence, but only a part of them were copied in the record, and the presumption must be that the court below had evidence to justify it in holding that they were executed by persons having authority by ordinance to so execute them.

Appellee also introduced evidence showing that Jones, the city clerk, received from sundry individuals the sum of $280 for the privilege of taking ice from the reservoir of appellee's water works, and also the contracts entered into between the city and the different persons from whom such sums were received, which evidence was objected to by appellants, and the objection overruled by the court, and, as we think, very properly.

We think the principal error committed by the court below was in the amount of damages assessed against appellants The record shows that the amount of money collected by Jones, the city clerk, which he had the right as such clerk to collect, and for which appellants, as his sureties, must account to the city, is $4,592.47, as follows:

Received for menagerie, circus and other licenses. $    137 50
"         "    water rates, etc.....................    1,319 71
"         "    railroads for water used...........    1,260 00
"         "    ice privileges.....................      280 00
"         "    team and other licenses...........    1,595 26
                                                     ---------
                                                     $4,592 47

The amount Jones paid to treasury is as follows:

To general fund.................... $   919 90
To water fund.....................    2,696 56
To due Jones settlement 16 April, '81.    39 65
To paid by Jones in Ballou suit......     47 00
To due Jones for attorney's fees in
    Chappel suit......................     75 00
                                      --------
                                               3,778 11
                                               --------
                                               $ 814 36

Leaving a deficit of $814.36, which is the amount of damages which should have been assessed by the court against appellants.

For the errors indicated the judgment of the court below must be reversed and the cause remanded.

Judgment reversed.